UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHELLE WALLS, KATHERINE AVERY,
FARAH GHANIE, JESSIE MCNAUGHTON,
BRITTANY BROOKS, DANIELLE
CHRISTENSEN, CORTNEY EGE, LASHONTA
GRIFFIN, KAITLYN RIVERA, AUGUSTA
GUFFROY, KARIMA HARRIS, QUINCY
TILSON, KATHRYN HENRY, HELEN
HOWARD, VANESSA INOA, CASSIE ISZA,
KRISTAL ROGERS, OSHIN JARRETT,
MARINA JOKIC, ARLENE MCCOY, MANUEL
OROZCO, MANDY ROY, on behalf of
themselves and all others similarly situated;

                            Plaintiffs,

        v.

THE HAIN CELESTIAL GROUP, INC.;

                      Defendant.

Case No.: 1:21-cv-00870 (JS) (AYS)

AMENDED CLASS ACTION
COMPLAINT

JURY TRIAL DEMANDED

---

## INTRODUCTION

1.    Plaintiffs Michelle Walls, Katherine Avery, Farah Ghanie, Jessie McNaughton,

Brittany Brooks, Danielle Christensen, Cortney Ege, LaShonta Griffin, Kaitlyn Rivera, Augusta

Guffroy, Karima Harris, Quincy Tilson, Kathryn Henry, Helen Howard, Vanessa Inon, Cassie

Isza, Kristal Rogers, Oshin Jarrett, Marina Jokic, Arlene McCoy, Manuel Orozco, and Mandy

Roy (collectively "Plaintiffs"), by and through their counsel, on their own behalf and on behalf of

all others similarly situated, bring this Class Action Complaint against Defendant The Hain

Celestial Group, Inc. ("Hain" or "Defendant").

2.    Plaintiffs, like many parents of young and newborn children, place a premium on

only exposing their infant and young children to the safest and highest quality foods available on

the market.  Defendant manufactured, advertised, marketed, distributed, and sold its organic

- 1 -

baby food as one of the best and healthiest options available.  Defendant sells baby food products under the brand name Earth's Best Organic ("Earth's Best").

3.      Plaintiffs purchased Defendant's organic baby food products ("Earth's Best Baby Foods") and fed them to their children for months or even years.  Like so many parents, Plaintiffs reasonably believed that Defendant's baby foods were safe to feed to their children.

4.      But as Plaintiffs discovered—and as Defendant already knew—that was not the case.

5.      On February 4, 2021, the United States House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("House Subcommittee") published a bombshell report revealing that several baby food producers sold products that contained significant and dangerous levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury in the finished product and/or the product ingredients.  *See* Staff of H. Subcomm. on Econ. and Consumer Policy, Comm. on Oversight and Reform, 117th Cong., *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (Feb. 4, 2021) ("Subcommittee Report" or "Rept."; attached as Exhibit A).  The Report revealed that Defendant's own internal testing showed that finished baby food products and/or ingredients used in the finished baby food products contained significant and dangerous levels of arsenic, lead, and cadmium, *see* Rept. at 2–4, and expressed concern that Defendant does "not even test for mercury in baby food," *see id.* at 4.

6.      The House Subcommittee Report followed reporting from consumer advocacy groups, including one group—Healthy Babies Bright Futures—whose commissioned testing of baby foods revealed the presence of Toxic Heavy Metals in 95 percent of products tested,

including Defendant's products.  *See* Jane Houlihan & Charlotte Brody, *What's in my baby food?*, Healthy Babies Bright Futures (Oct. 2019); attached as Exhibit B.

7.     The House Subcommittee Report noted that exposing children to Toxic Heavy Metals causes permanent decreases in IQ, an increased risk of future criminal and antisocial behavior, and "untreatable and frequently permanent" brain damage.  This exposure has real economic consequences, as one study has shown that for each IQ point lost, a child's lifetime estimated earning capacity will decrease by over $18,000.  *See* Rept. at 9.

8.     Due to Defendant's deceptive business practices and the harms such practices have caused to countless parents and children in the United States, Plaintiffs have brought this action and seek to represent Proposed Classes (as defined herein), who, between the beginning of any applicable limitations period and the present, purchased for personal/household use and not resale any of Defendant's Earth's Best Baby Foods containing or at substantial risk of containing harmful Toxic Heavy Metals.

9.     Plaintiffs' Complaint alleges claims for Defendant's violation of various state laws barring false, deceptive, or unfair acts or practices in commerce, and for unjust enrichment.

10.    Plaintiffs seek injunctive and/or declaratory relief and monetary relief on behalf of the Proposed Classes including requiring the Defendant's (i) accurate disclosure of the levels of the Toxic Heavy Metals present in the baby food products sold by Defendant in its marketing, advertising, and labeling; (ii) testing of ingredients and final products to accurately determine the levels of Toxic Heavy Metals present in Defendant's baby food products; and (iii) restoring monies to the members of the Proposed Classes.

## PARTIES

11.    Plaintiff Michelle Walls is a resident of Staten Island, New York.  During the applicable statute of limitations period, Ms. Walls purchased Defendant's Earth's Best Baby

Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

12.     Plaintiff Katherine Avery is a resident of Staten Island, New York.  During the applicable statute of limitations period, Ms. Avery purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

13.     Plaintiff Farah Ghanie is a resident of Queens Village, New York.  During the applicable statute of limitations period, Ms. Ghanie purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

14.     Plaintiff Jessie McNaughton is a resident of Fairport, New York.  During the applicable statute of limitations period, Ms. McNaughton purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

15.     Plaintiff Britany Brooks is a resident of Troy, Missouri.  During the applicable statute of limitations period, Ms. Brooks purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

16.     Plaintiff Danielle Christensen is a resident of Lake Havasu City, Arizona.  During the applicable statute of limitations period, Ms. Christensen purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

17.     Plaintiff Cortney Ege is a resident of Baltimore, Maryland.  During the applicable statute of limitations period, Ms. Ege purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

18.     Plaintiff LaShonta Griffin is a resident of Charleston, South Carolina.  During the applicable statute of limitations period, Ms. Griffin purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

19.     Plaintiff Kaitlyn Rivera is a resident of Greenville, South Carolina.  During the applicable statute of limitations period, Ms. Rivera purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

20.     Plaintiff Augusta Guffroy is a resident of Deerfield, Illinois.  During the applicable statute of limitations period, Ms. Guffroy purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

21.     Plaintiff Karima Harris is a resident of Newark, Delaware.  During the applicable statute of limitations period, Ms. Harris purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

22.     Plaintiff Quincy Tilson is a resident of Wilmington, Delaware.  During the applicable statute of limitations period, Ms. Tilson purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

23.     Plaintiff Kathryn Henry is a resident of Eugene, Oregon.  During the applicable statute of limitations period, Ms. Henry purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

24.     Plaintiff Helen Howard is a resident of Winston Salem, North Carolina.  During the applicable statute of limitations period, Ms. Howard purchased Defendant's Earth's Best

Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

25.     Plaintiff Vanessa Inoa is a resident of Kissimmee, Florida.  During the applicable statute of limitations period, Ms. Inoa purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

26.     Plaintiff Cassie Isza is a resident of Mishawaka, Indiana.  During the applicable statute of limitations period, Ms. Isza purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

27.     Plaintiff Kristal Rogers is a resident of Fort Wayne, Indiana.  During the applicable statute of limitations period, Ms. Rogers purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

28.     Plaintiff Oshin Jarrett is a resident of Gastonia, North Carolina.  During the applicable statute of limitations period, Ms. Jarrett purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

29.     Plaintiff Marina Jokic is a resident of Malden, Massachusetts.  During the applicable statute of limitations period, Ms. Jokic purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

30.     Plaintiff Arlene McCoy is a resident of Proctor, Vermont.  During the applicable statute of limitations period, Ms. McCoy purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

31.     Plaintiff Manuel Orozco is a resident of Athens, Tennessee.  During the applicable statute of limitations period, Mr. Orozco purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

32.     Plaintiff Mandy Roy is a resident of Westminster, Colorado.  During the applicable statute of limitations period, Ms. Roy purchased Defendant's Earth's Best Baby Foods that contained or were at substantial risk of containing dangerous levels of Toxic Heavy Metals.

33.     Defendant Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business and headquarters located at 111 Marcus Avenue, #1, Lake Success, New York.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  Defendant is a citizen of a state different from most Plaintiffs, and on information and belief, more than two-thirds of Class Members reside in states other than the state of which Defendant is a citizen; there are more than 100 Class Members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

35.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b).  Defendant is headquartered in New York; Defendant conducts substantial business in this State and judicial district through its sale of products and commercial websites; and a substantial part of the events and omissions giving rise to the alleged conduct occurred in, were directed to, and were emanated from this district.

**FACTUAL ALLEGATIONS**

I.    **Congress's Investigation Reveals Elevated Levels of Toxic Heavy Metals in Defendant's Baby Food, and That Defendant Knowingly Sold Baby Foods with Unsafe Levels to Consumers.**

36.    On November 6, 2019, the U.S. House Subcommittee "requested internal documents and test results from seven of the largest manufacturers of baby food in the United States," including Defendant.  Rept. at 2.

37.    Defendant responded to the House Subcommittee's requests, producing "internal testing policies, test results for ingredients and/or finished products, and documentation about what the companies did with ingredients and/or finished products that exceeded their internal testing limits."  *Id.*

38.    As mentioned above, on February 4, 2021, the House Subcommittee published its Report, which found that commercial baby foods are "tainted with significant levels" of the Toxic Heavy Metals.  *Id.*

39.    The Subcommittee Report showed that levels of Toxic Heavy Metals present in certain Earth's Best Baby Foods—and their ingredients—produced and sold by Defendant were "multiples higher than allowed under existing regulations for other products."  *Id.* at 4.  For example:

a.    The United States Food and Drug Administration ("FDA") has set a maximum allowable level of **10** parts per billion ("ppb") of inorganic arsenic in bottled drinking water.  Defendant's finished baby food products contained as much as **129** ppb of arsenic, and used ingredients showing up to **309** ppb of arsenic in its products.  According to the Report, Defendant "typically" did not test its "finished products," *i.e.*, the baby food products it sells to the public, for dangerous elements such as the Toxic Heavy Metals, *id.* at 3, which

- 8 -

risks an undercount of Toxic Heavy Metals in the finished product, and "recklessly endangers babies and children and prevents the company[y] from even knowing the full extent of the danger presented by [its] products," *id.* at 56–57.

b.  The FDA has set a maximum allowable level of **5** ppb of lead in bottled drinking water.  The FDA has set a maximum allowable level of **100** ppb of lead in candy.  *Id.* at 21–22.  Defendant used ingredients with as much as **352** ppb of lead, eighty-eight of its ingredients tested over **20** ppb of lead, and six of its ingredients tested over **200** ppb of lead.[1]  *Id.*

c.  The FDA has set a maximum allowable level of **5** ppb of cadmium in bottled drinking water.  Defendant used one-hundred-two ingredients with over **20** ppb of cadmium, with some as high as **260** ppb.  *Id.*

d.  The United States Environmental Protection Agency ("EPA") has set a maximum allowable level of **2** ppb of mercury in drinking water.  One baby food producer's finished and sold baby food products contained as much as **10** ppb of mercury.  As the Report revealed, Defendant "do[es] not even test for mercury" in its baby food products.  *Id.* at 4.

40.     The Subcommittee Report showed that Defendant has staggering and stratospheric internal limits when testing baby food products or ingredients for Toxic Heavy

---

[1] It is both disturbing and notable that, for comparison's sake, the 90th percentile lead level among samples collected in Flint, Michigan's water system during the Flint Water Crisis was 27 ppb.  *See* Christopher Ingraham, *This is how toxic Flint's water really is*, The Washington Post, https://www.washingtonpost.com/news/wonk/wp/2016/01/15/this-is-how-toxic-flints-water-really-is/ (Jan. 15, 2016).

Metals, which would often have the effect of dangerous levels in ingredients nonetheless "passing" Defendant's internal checks.  As the Report revealed, in some circumstances the baby food producers even sold baby food products in excess of their own threshold standards.  For example:

    a.   One producer set its internal arsenic, lead, and cadmium thresholds up to **100** ppb.  That producer's tested baby food products exceeded its own thresholds and were still sold to the public.  *Id.* at 13–14, 22, 31.

    b.   Depending on the ingredient tested, another producer set its internal arsenic and cadmium standards between **100** and **3,000** ppb.  *Id.* at 4, 17–18.  That producer accepted the use of ingredients that tested as high as **913.4** ppb of arsenic, even when the internal threshold was set at 100 ppb.  *Id.* at 17.  Its lead threshold was up to **1,000** ppb, ten times the FDA-accepted level in candy and two-hundred times the FDA-accepted level in drinking water.  *Id.* at 23.

    c.   Defendant Hain set internal arsenic, lead, and cadmium standards of up to **200** ppb for "some of its ingredients."  As reflected above, Hain used ingredients with arsenic, lead, and cadmium contents in excess of its own internal standards, and even admitted that its internal standard was based on "theoretical calculations" and that its testing "underestimated final product toxic heavy metal levels."  *Id.* at 4–5.

41.    The Subcommittee Report revealed that on August 1, 2019, Defendant gave a secret presentation to the FDA.  The presentation revealed:

    a.   Testing ingredients, rather than final products, which Defendant does, "underrepresent[ed]" Toxic Heavy Metal levels in its baby food products.

Indeed, **<u>100%</u>** of tested Hain baby food products had "inorganic arsenic levels … higher in the finished baby food than the company estimated they would be based on individual ingredient testing," with levels between 28–93% higher in finished products than ingredients.  *Id.* at 5.

b.  Not only was the quantity of arsenic concerning, but the breadth of baby food inventory with elevated arsenic levels was also significant.  Defendant said that half of its brown rice baby food products contained over **<u>100</u>** ppb of inorganic arsenic, with an average across all brown rice baby food products of **<u>97.62</u>** ppb.  *Id.*

c.  Defendant conceded that this was not exclusively caused by naturally occurring Toxic Heavy Metals in the ingredients it used in its baby food products.  Rather, Defendant said that it and other baby food producers were adding ingredients to their baby food products with high levels of Toxic Heavy Metals, including vitamin and mineral pre-mix.[2]  *Id.*

42.    The Subcommittee Report's findings were disturbing on many levels, e.g., that such harmful heavy metals could be found in such substantial amounts within baby food producers' (including Defendant's) organic and non-organic baby foods, the baby food producers' apparent knowledge of such toxic metals in their baby foods, and their apparent failure to take appropriate steps to protect the infants and young children regularly ingesting such toxic metals.

_____

[2] The FDA, at the time under the direction of the Trump administration, took no new action in response to this disturbing presentation.  *See* Rept. at 5.

43.     As noted in the Subcommittee Report, babies' developing brains are "exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity." *Id.* at 9.  The fact that babies are small, have other developing organ systems, and absorb more of the heavy metals than adults, exacerbates their risk from exposure to heavy metals.  *Id.*

44.     Indeed, the FDA has declared that inorganic arsenic, lead, cadmium, and mercury are dangerous, particularly to infants and children.  *Id.*  They have "no established health benefit" and "lead to illness, impairment, and in high doses, death."  *Id.*  "[E]ven low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."  *Id.*  In short, infants and children are at the greatest risk of harm from toxic heavy metal exposure.  *Id.*

**II.    Defendant's Deceptive, Misleading, and False Communications About the Safety and Health of Its Products.**

45.     Despite the disturbing results of these product and ingredient tests for Defendant's baby food products, Defendant materially advertised, labeled, and marketed its Earth's Best Baby Foods under its Earth's Best Organic brand name as healthy, safe, suitable for babies, and helping in children's development.

46.     Defendant, under the Earth's Best label, has held itself out to average consumers as leading the "organic baby food movement" "[w]ith quality ingredients"; stating that "Earth's Best products are created with care, using pure, simple ingredients founds in nature."  The Earth's Best website encourages consumers to "[n]uture [their] baby's development" with its baby foods, and notes that Earth's Best "strive[s]" to provide products "that are pure, ***safe*** and sustainable."  *See generally* earthsbest.com (emphasis added) (last accessed July 7, 2021).

47.     The Earth's Best website states that "[c]hoosing organic is to live a healthy life," that Earth's Best "pride[s] [itself] on providing safe, nourishing foods," and lists "[r]igorous product testing to guarantee quality and safety" as part of "The Earth's Best Organic Difference."  The website also provides a "promise" of "attention to quality" when it comes to "ingredient and product quality and safety":

## Attention to Quality

From the beginning of our farming process to the moment when your little one tastes Earth's Best® products, we ensure a high degree of attention to both ingredient and product quality and safety – from procuring, handling, storing, blending, and packaging through distributing Earth's Best® products to our consumer.

Learn More

## Our Promise



48.     Defendant also advertises and represents its baby food products as "time-trusted and safe" and that the products "are made from pure ingredients to help children grow up strong and healthy":



http://www.hain.com/company/ (last accessed Feb. 11, 2021).

49.     Earth's Best packaging and baby food labels misleadingly omit the material fact of

Toxic Heavy Metals presence.  Instead, Earth's Best jars represent and suggest that the products

are "pure," "nurturing," and safe for consumption by children of specific ages (for example, "6+

months"):

 



50.     Earth's Best cereal packaging states that babies begin life "pure," and instructs parents to "feed them accordingly."  The packaging also represents to parents that by using Defendant's product, "you can be sure your baby's rapidly developing little body is getting only pure, healthy, organic nutrition," and assures customers that Defendant "takes[s] extra steps" with "all [its] baby foods":




- 15 -

51. In one video advertisement for Earth's Best products, a voiceover states, "every baby deserves the very best start in life. We are Earth's Best." *See* https://vimeo.com/281284447 at 00:46 (last accessed July 7, 2021). Another promotional video, titled, "Why Earth's Best?," features a nutritionist stating that she chose Earth's Best for "three reasons," one of which is "trust." *See* https://www.youtube.com/watch?v=MPImxoRJhfw at 00:19 (last accessed July 7, 2021).

52. Earth's Best social media pages contain additional, material representations that average consumers would reasonably rely upon to conclude that their children would not be exposed to unsafe levels of Toxic Heavy Metals via consumption of Defendant's products.

53. The Earth's Best Twitter byline encourages parents and guardians to "[n]uture [their] growing baby with only the purest, natural and organic products from Earth's Best." https://twitter.com/earthsbest?lang=en (last accessed July 7, 2021).

54. The Earth's Best Instagram account advertises its baby food as "a nourishing blend … to fuel your baby's development":



And as "full of … nutrition to keep babies growing and developing":



55.     The Earth's Best Facebook page, which has nearly 300,000 followers (last accessed July 8, 2021), markets and advertises its products as containing "wholesome ingredients":



"Nutritious" ingredients, including sweet potatoes:



And implies that its products are good for brain development:



56.     Defendant's labeling, statements, representations, and advertising, taken and considered as a whole from the perspective of a reasonable consumer, conveyed that Earth's Best Baby Foods were healthy, safe, and suitable for babies to consume.

**III.    Defendant's Effort to Highlight Its Involvement in the Baby Food Council Underscores Its Misleading Behavior.**

57.     The same day that the House Subcommittee released its Report, Defendant released the following statement:

> Our rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines.  In addition, we work collaboratively with the Baby Food Council (composed of other manufacturers, the Environmental Defense Fund and Cornell University), the Food and Drug Administration and the Department of Agriculture to continuously refine and improve upon the standards to ensure our products exceed safety and nutrition standards – including reducing the levels of heavy metals that occur naturally in soil and water.

Hain Celestial, *Statement in Response to Congressional Report* (Feb. 4, 2021), *available at*

https://ir.hain.com/node/17251/pdf (last accessed July 9, 2021).

58.     This statement, like Defendant's other representations, is misleading and

deceptive.  Its statement about "rigorous internal standards and testing procedures" is belied by

the contents of the Subcommittee Report; its statement about "meet[ing] or exceed[ing] the

current federal guidelines" is misleading (there are no current legally binding federal

requirements that Defendant must follow and only minimal guidelines are in existence); and its

statement about working collaboratively with the Baby Food Council to improve upon standards

does little more than indicate Defendant's knowledge that its products are unsafe and need to

improve.

59.     The Baby Food Council (the "Council") is an industry initiative, comprised of

baby food companies, including Defendant, Beech-Nut Nutrition Company, Gerber Products

Company, and Happy Family Organics.  It was founded after scathing reporting from nonprofits

and consumer groups that had begun testing and shedding light on heavy metals in baby food.

*See, e.g.*, *What Are You Really Feeding Your Baby?*, Clean Label Project (Oct. 25, 2017),

https://cleanlabelproject.org/blog-post/clp-infant-formula-baby-food-test/ (last accessed July 7,

2021).

60.     The Council was created in January 2019, in partnership with Cornell University,

and the environmental non-profit, the Environmental Defense Fund.  In addition to baby food

companies, such as Defendant, the Council's members include Cornell University, the

Environmental Defense Fund, and an alliance of non-profit organizations called Healthy Babies

Bright Futures.

61.     Cornell's webpage describing the Baby Food Council suggests that the aim of the

Council is "to reduce heavy metals in the companies' products to as low as reasonably

achievable." Cornell College of Agriculture and Life Science, *The Baby Food Council*,

https://cals.cornell.edu/food-science/industry-engagement/other-industry-initiatives (last

accessed July 7, 2021).

62.     Despite being a Baby Food Council member, Defendant's own statements

contradict the positions taken by other members, further indicating that Defendant's statements

are self-interested, misleading, and deceptive.

63.     For example, Cornell's webpage states that "[a] best practice to reduce heavy

metals in vegetable and fruit purees is to regularly test ingredients ***and products*** … to identify

and resolve potential problems." *Id.* (emphasis added).  As revealed in the House Subcommittee

Report, Hain "typically" did not test its "finished products."  Rept. at 3.

64.     Cornell's webpage also notes that the Toxic Heavy Metals "occur naturally ***or***

***from pollution in the environment***."  Defendant, in contrast, continuously attempts to

downplay the severity of heavy metals by indicating that they are "natural," which is not only

misleading in and of itself because it falsely insinuates that the Toxic Heavy Metals are harmless

and/or that Defendant cannot do anything to mitigate, reduce, or remedy their existence, but

also fails to acknowledge that heavy metal contamination also results from pollution.  *See, e.g.*,

Earth's Best Organic, *Our commitment to food safety*, https://www.earthsbest.com/parents/faq/ (last

accessed July 7, 2021) (stating that heavy metals "occur naturally in soil and water" and are

"naturally occurring" in baby food).

65.     More insidiously, in public facing communications, Defendant also fails to mention that it actively *adds* potential non-natural sources of heavy metals to its baby food—a fact it saw fit to mention in secret meetings with the FDA.  As mentioned in the Subcommittee Report, Defendant informed the FDA that its own investigations indicated that "Vitamin/Mineral Pre-Mix may be a contributing factor" to high levels of inorganic arsenic in Defendant's products.  Rept. at 56.  As plainly stated in the Subcommittee Report: "naturally occurring toxic heavy metals may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers like Hain are adding ingredients that have high levels of toxic heavy metals into their products."  *Id.*

66.     Cornell's webpage further confirms that the presence of Toxic Heavy Metals "in baby food … is a concern because babies are more sensitive to their harmful impacts," and emphasizes that "[t]here is no known safe level of exposure to these metals; hence even low levels of contamination are a concern."

## IV.    Plaintiffs Purchase Defendant's Earth's Best Baby Foods.

### Michelle Walls

67.     Plaintiff Walls's son was born in 2020.

68.     Plaintiff Michelle Walls is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

69.     In making the decision about what to feed her son after stopping breastfeeding, Walls saw product labels and other product communications when shopping at Target and her

local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Apple Sunny Days Snack Bars" and "Blueberry Breakfast Biscuits."[3]

70.     Walls, relying on its representations and reputation, trusted Defendant as a baby food seller, and considered Defendant's baby food to be the "gold standard."

71.     Walls purchased the Earth's Best Baby Foods on information and belief between July 2020 and February 2021, and later fed such Earth's Best Baby Foods to her son.

72.     Walls believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed her son, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

73.     Had Walls known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

74.     On or around February 6, 2021, Walls saw media coverage of the Subcommittee Report.  Shocked by what she read, she immediately stopped feeding her son the Earth's Best Baby Foods.

**Katherine Avery**

75.     Plaintiff Avery's twins were born in 2019.

76.     Plaintiff Katherine Avery is a dedicated and loving mother to twins who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing.

---

[3] On information and belief, Defendant's product names may differ depending on the year of production.  All product names listed in Plaintiffs' Complaint are representative of the product's current name, or a name that the specific product was titled at one time in the history.

77.     In making the decision about what to feed her children, Avery saw product labels and other product communications when shopping on Amazon and at local grocery stores. Avery decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Rice Cereal," "Organic Stage 2 Blueberry Banana Flax & Oat Wholesome Breakfast Puree," "Organic Peanut Butter Baked Corn Puffs," and "Strawberry Sunny Days Snack Bars."

78.     Avery purchased the Earth's Best Baby Foods on information and belief between August 2020 and February 2021, and later fed such Earth's Best Baby Foods to her twins.

79.     Avery believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her twins, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

80.     Had Avery known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

81.     In February of 2021, Avery saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped feeding her twins the Earth's Best Baby Foods.

**Farah Ghanie**

82.     Plaintiff Ghanie's daughter was born in 2020.

83.     Plaintiff Farah Ghanie is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep daughter healthy, growing, and developing.

84.     In making the decision about what to feed her daughter, Ghanie saw product labels and other product communications when shopping at Walmart and local grocery stores

and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Oatmeal Cereal."

85.     Ghanie purchased the Earth's Best Baby Foods on information and belief between September 2020 and January 2021, and later fed such Earth's Best Baby Foods to her daughter.

86.     Ghanie believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her daughter, relying on Defendant's reputation, labels, marketing, and communications. She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

87.     Had Ghanie known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

88.     In early February 2021, Ghanie saw media coverage of the Subcommittee Report.  Shocked by what she read, she immediately stopped feeding her daughter the Earth's Best Baby Foods.

**Jessie McNaughton**

89.     Plaintiff McNaughton's daughter was born in 2019.

90.     Plaintiff Jessie McNaughton is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep daughter healthy, growing, and developing.

91.     In making the decision about what to feed her daughter, McNaughton saw product labels and other product communications when shopping at Wegmans and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Rice Cereal" and "Whole Grain Oatmeal Cereal."

92.     McNaughton purchased the Earth's Best Baby Foods on information and belief between December 2019 and Fall of 2020, and later fed such Earth's Best Baby Foods to her daughter.

93.     McNaughton believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her daughter, relying on Defendant's reputation, labels, marketing, and communications. She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

94.     Had McNaughton known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

**Brittany Brooks**

95.     Plaintiff Brooks's son was born in 2019.

96.     Plaintiff Brooks is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

97.     In making the decision about what to feed her son, Brooks saw product labels and other product communications when shopping at Walmart, Target, and on Amazon and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Organic Stage 2 Carrots Jar."

98.     Brooks, relying on its representations and reputation, trusted Defendant as a baby food seller, and expected Defendant's baby food to be "healthy and safe food."

99.     Brooks purchased the Earth's Best Baby Foods on information and belief between October 2019 and May 2021, and later fed such Earth's Best Baby Foods to her son.

100.    Brooks believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputation, labels, marketing, and

communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

101.    Had Brooks known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

102.    On or around May 16, 2021, Brooks saw media coverage of the Subcommittee Report.

**Danielle Christensen**

103.    Plaintiff Christensen's oldest child was born in 2016.

104.    Plaintiff Christensen's youngest child was born in 2020.

105.    Plaintiff Danielle Christensen is a dedicated and loving mother who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing.

106.    In making the decision about what to feed her children, Christensen saw product labels and other product communications when shopping at her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Strawberry Banana Fruit Yogurt Smoothie."

107.    Christensen purchased the Earth's Best Baby Foods on information and belief between June 2016 and March 2021, and later fed such Earth's Best Baby Foods to her children.

108.    Christensen believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her children, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

109.    Had Christensen known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

- 26 -

110.    In March 2021, Christensen saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped feeding her children the Earth's Best Baby Foods.

**Cortney Ege**

111.    Plaintiff Ege's son was born in 2019.

112.    Plaintiff Cortney Ege is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

113.    In making the decision about what to feed her son, Ege saw product labels and other product communications when shopping at Target and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not limited to: "Organic Stage 2 Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Puree," "Organic Stage 3 Beef Medley with Vegetables Homestyle Meal Puree," "Organic Stage 3 Chicken Pot Pie Homestyle Meal," "Organic Stage 3 Turkey Quinoa Apple Sweet Potato Homestyle Meal," and "Organic Stage 2 Sweet Potato & Apple Baby Food Puree."

114.    Ege purchased the Earth's Best Baby Foods on information and belief between November 2019 and February 2021, and later fed such Earth's Best Baby Foods to her son.

115.    Ege believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputations, labels, marketing, and communications. She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

116.    Had Ege known what she knows now about the Earth's Best Baby Foods, she never would have purchased them.

117.    In May 2021, Ege saw media coverage of the Subcommittee Report.

**LaShonta Griffin**

118.    Plaintiff Griffin's son was born in 2018.

119.    Plaintiff Griffin's daughter was born in 2020.

120.    Plaintiff LaShonta Griffin is a dedicated and loving mother who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing.

121.    In making the decision about what to feed her children Griffin saw product labels and other product communications when shopping at her local Publix and Harris Teeter grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Organic Stage 2 Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Puree" and "Organic Stage 2 Sweet Potato & Apple Baby Food Puree."

122.    Griffin purchased the Earth's Best Baby Foods on information and belief between October 2018 and January 2021, and later fed such Earth's Best Baby Foods to her children.

123.    Griffin believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her children, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

124.    Had Griffin known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

125.    In late Spring of 2021, Griffin saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped feeding her daughter the Earth's Best Baby Foods.

**Kaitlyn Rivera**

126.    Plaintiff Rivera's first son was born in 2018.

- 28 -

127.   Plaintiff Rivera's second son was born in 2019.

128.   Plaintiff Rivera is a dedicated and loving mother who places a premium on ensuring her sons are healthy, and consume food that will keep them healthy, growing, and developing.

129.   In making the decision about what to feed her sons, Rivera saw product labels and other product communications when shopping at Walmart and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Organic Stage 2 Banana Blueberry Baby Food Puree" and "Organic Stage 2 Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Puree."

130.   Rivera purchased the Earth's Best Baby Foods on information and belief between February 2019 to October 2019, and later fed such Earth's Best Baby Foods to her son.

131.   Rivera believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her sons, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

132.   Had Rivera known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

**Augusta Guffroy**

133.   Plaintiff Guffroy's daughter was born in 2019.

134.   Plaintiff Augusta Guffroy is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing.

135.   In making the decision about what to feed her daughter, Guffroy saw product labels and other product communications when shopping at her local grocery stores and decided

to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Oatmeal Cereal."

136.    Guffroy purchased the Earth's Best Baby Foods on information and belief between April 2020 and February 2021, and later fed such Earth's Best Baby Foods to her daughter.

137.    Guffroy believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her daughter, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

138.    Had Guffroy known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

139.    In May 2021, Guffroy saw media coverage of the Subcommittee Report.

**Karima Harris**

140.    Plaintiff Harris's son was born in 2021.

141.    Plaintiff Karima Harris is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

142.    In making the decision about what to feed her son, Harris saw product labels and other product communications when shopping at Target and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Oatmeal Cereal."

143.    Harris purchased the Earth's Best Baby Foods on information and belief between March 2021 and May 2021, and later fed such Earth's Best Baby Foods to her son.

144.    Harris believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputations, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

145.    Had Harris known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

**Quincy Tilson**

146.    Plaintiff Tilson's son was born in 2019.

147.    Plaintiff Quincy Tilson is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

148.    In making the decision about what to feed her son, Tilson saw product labels and other product communications when shopping at Walmart and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Organic Stage 2 Sweet Potatoes Jar."

149.    Tilson purchased the Earth's Best Baby Foods on information and belief between July 2020 and February 2021, and later fed such Earth's Best Baby Foods to her son.

150.    Tilson believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

151.    Had Tilson known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

152.    On or around February 6, 2021, Tilson saw the Subcommittee Report.  Shocked by what she read, she immediately stopped feeding her son the Earth's Best Baby Foods.

**Kathryn Henry**

153.    Plaintiff Henry's son was born in 2015.

154.    Plaintiff Katherine Henry is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

155.    In making the decision about what to feed her son, Henry saw product labels and other product communications when shopping on Amazon and at her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Organic Stage 2 Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Puree" and "Organic Stage 2 Pumpkin & Spinach Veggie Puree."

156.    Henry purchased the Earth's Best Baby Foods on information and belief between December 2015 and December 2020, and later fed such Earth's Best Baby Foods to her son.

157.    Henry believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

158.    Had Henry known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

**Helen Howard**

159.    Plaintiff Howard's daughter was born in 2020.

160.   Plaintiff Helen Howard is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing.

161.   In making the decision about what to feed her daughter, Howard saw product labels and other product communications when shopping at her local Harris Teeter and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Organics Stage 2 Apple Strawberry Baby Food Puree," "Organic Stage 2 Blueberry Banana Flax & Oat Wholesome Breakfast Puree," and "Organic Stage 2 Sweet Potatoes Jar."

162.   Howard purchased the Earth's Best Baby Foods on information and belief between November 2020 and April 2021, and later fed such Earth's Best Baby Foods to her daughter.

163.   Howard believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her daughter, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

164.   Had Howard known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

**Vanessa Inoa**

165.   Plaintiff Inoa's daughter was born in 2019.

166.   Plaintiff Vanessa Inoa is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing.

167.   In making the decision about what to feed her daughter, Inoa saw product labels and other product communications when shopping at Walmart and Publix and decided to

purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Rice Cereal" and "Whole Grain Oatmeal Cereal."

168.    Inoa purchased the Earth's Best Baby Foods on information and belief between August 2019 and February 2021, and later fed such Earth's Best Baby Foods to her daughter.

169.    Inoa believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her daughter, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

170.    Had Inoa known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

171.    In February 2021, Inoa saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped feeding her daughter the Earth's Best Baby Foods.

**Cassie Isza**

172.    Plaintiff Isza's son was born in 2019.

173.    Plaintiff Cassie Isza is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

174.    In making the decision about what to feed her son, Isza saw product labels and other product communications when shopping at Meijer's and other local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Multi-Grain Cereal" and "Rice Cereal."

175.    Isza purchased the Earth's Best Baby Foods on information and belief between April 2020 and November 2020, and later fed such Earth's Best Baby Foods to her son.

176.     Isza believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputation, labels, marketing, and communications. She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

177.     Had Isza known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

**Kristal Rogers**

178.     Plaintiff Rogers's daughter was in 2015.

179.     Plaintiff Rogers's son was born in 2018.

180.     Plaintiff Kristal Rogers is a dedicated and loving mother who places a premium on ensuring her children are healthy, and consume food that will keep them healthy, growing, and developing.

181.     In making the decision about what to feed her children, Rogers saw product labels and other product communications when shopping at Walmart, Kroger, and Fresh Thyme Market and decided to purchase Defendant's Earth's Best Baby Foods, including but not limited to: "Whole Grain Rice Cereal."

182.     Rogers purchased the Earth's Best Baby Foods on information and belief between January 2016 and March 2021, and later fed such Earth's Best Baby Foods to her daughter and son.

183.     Rogers believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her children, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

- 35 -

184.    Had Rogers known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

185.    In early April 2021, Rogers saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped purchasing the Earth's Best Baby Foods.

**Oshin Jarrett**

186.    Plaintiff Jarrett's daughter was born in 2020.

187.    Plaintiff Oshin Jarrett is a dedicated and loving mother who places a premium on ensuring her daughter is healthy, and consumes food that will keep her healthy, growing, and developing.

188.    In making the decision about what to feed her, Jarrett saw product labels and other product communications when shopping at Target and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Rice Cereal" and "Whole Grain Multi-Grain Cereal."

189.    Jarrett purchased the Earth's Best Baby Foods on information and belief between August 2020 and February 2021, and later fed such Earth's Best Baby Foods to her daughter.

190.    Jarrett believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her daughter, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

191.    Had Jarrett known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

192.    In the Spring of 2021, Jarrett saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped feeding her daughter the Earth's Best Baby Foods.

**Marina Jokic**

193.    Plaintiff Jokic's son was born in 2021.

194.    Plaintiff Marina Jokic is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

195.    In making the decision about what to feed her son, Jokic saw product labels and other product communications when shopping at Target and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Oatmeal Cereal" and the "Whole Grain Multi-Grain Cereal."

196.    Jokic purchased the Earth's Best Baby Foods on information and belief between April 2020 and May 2021, and later fed such Earth's Best Baby Foods to her son.

197.    Jokic believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

198.    Had Jokic known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

199.    In May 2021, Jokic saw media coverage of the Subcommittee Report.  Shocked by what she read, she immediately stopped feeding her son the Earth's Best Baby Foods.

**Arlene McCoy**

200.    Plaintiff McCoy's son was born in 2017.

201.    Plaintiff McCoy is a dedicated and loving mother who places a premium on ensuring her son is healthy and consumes food that will keep her son healthy, growing, and developing.

202.    In making the decision about what to feed her son, McCoy saw product labels and other product communications when shopping at Walmart and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Strawberry Banana Fruit Yogurt Smoothie."

203.    McCoy purchased the Earth's Best Baby Foods on information and belief between August 2017 and February 2021, and later fed such Earth's Best Baby Foods to her son.

204.    McCoy believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed her son, relying on Defendant's reputation, labels, marketing, and communications.  She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

205.    Had McCoy known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

206.    In February 2021, McCoy saw media coverage of the Subcommittee Report. Shocked by what she read, she immediately stopped feeding her son the Earth's Best Baby Foods.

**Manuel Orozco**

207.    Plaintiff Orozco's son was born in 2018.

208.    Plaintiff Manuel Orozco is a dedicated and loving father who places a premium on ensuring his son is healthy, and consumes food that will keep him healthy, growing, and developing.

209.    In making the decision about what to feed his son, Orozco saw product labels and other product communications when shopping at Walmart, his local grocery stores, and on Amazon and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Oatmeal Cereal" and "Whole Grain Multi-Grain Cereal."

210.    Orozco, relying on its representations and reputation, trusted Defendant as a baby food seller, and considered Defendant's baby food to be healthy and safe.

211.    Orozco purchased the Earth's Best Baby Foods on information and belief between May 2019 and February 2021, and later fed such Earth's Best Baby Foods to his son.

212.    Orozco believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to his son, relying on Defendant's reputation, labels, marketing, and communications.  He had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

213.    Had Orozco known what he knows now about the Earth's Best Baby Foods products, he never would have purchased them.

214.    On or around February 10, 2021, Orozco saw coverage of the Subcommittee Report.  Shocked by what he read, he immediately stopped feeding his son the Earth's Best Baby Foods.

**Mandy Roy**

215.    Plaintiff Roy's son was born in 2020.

216.    Plaintiff Mandy Roy is a dedicated and loving mother who places a premium on ensuring her son is healthy, and consumes food that will keep him healthy, growing, and developing.

217.    In making the decision about what to feed her son, Roy saw product labels and other product communications when shopping at Walmart, Target, and her local grocery stores and decided to purchase Defendant's Earth's Best Baby Foods, including but not necessarily limited to: "Whole Grain Rice Cereal."

218.    Roy started purchasing the Earth's Best Baby Foods on information and belief around October 2020.

- 39 -

219.    Roy believed that the Earth's Best Baby Foods were safe, healthy, and appropriate to feed to her son, relying on Defendant's reputation, labels, marketing, and communications. She had no reason to believe these products contained or were at substantial risk of containing elevated and/or dangerous levels of Toxic Heavy Metals.

220.    Had Roy known what she knows now about the Earth's Best Baby Foods products, she never would have purchased them.

## CLASS ACTION ALLEGATIONS

### I.    The National Class.

221.    Plaintiffs request certification pursuant to Rule 23(b)(2) and (b)(3) of a proposed injunctive and/or declaratory relief and damages class, as laid out below:

222.    All persons within the United States who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "National Purchaser Class").

### II.    The State Subclasses.

223.    Plaintiffs request certification pursuant to Rule 23(b)(2) and (b)(3) of the proposed injunctive and/or declaratory relief and damages subclasses as laid out below:

### Colorado

224.    All persons within the State of Colorado who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal

representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby

Foods for the purpose of resale (the "Colorado Subclass").

225. The Colorado Subclass is represented by Plaintiff Mandy Roy.

**Delaware**

226. All persons within the State of Delaware who purchased Hain's Earth's Best Baby

Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period

through the date of class certification, excluding the judge or magistrate assigned to this case,

Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal

representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby

Foods for the purpose of resale (the "Delaware Subclass").

227. The Delaware Subclass is represented by Plaintiffs Karima Harris and Quincy

Tilson.

**Florida**

228. All persons within the State of Florida who purchased Hain's Earth's Best Baby

Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period

through the date of class certification, excluding the judge or magistrate assigned to this case,

Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal

representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby

Foods for the purpose of resale (the "Florida Subclass").

229. The Florida Subclass is represented by Plaintiff Vanessa Inoa.

**Indiana**

230. All persons within the State of Indiana who purchased Hain's Earth's Best Baby

Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period

through the date of class certification, excluding the judge or magistrate assigned to this case,

Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Indiana Subclass").

231.   The Indiana Subclass is represented by Plaintiffs Cassie Isza and Kristal Rogers.

**New York**

232.   All persons within the State of New York who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "New York Subclass").

233.   The New York Subclass is represented by Plaintiffs Michelle Walls, Katherine Avery, Farah Ghanie, and Jessie McNaughton.

**North Carolina**

234.   All persons within the State of North Carolina who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "North Carolina Subclass").

235.   The North Carolina Subclass is represented by Plaintiffs Helen Howard and Oshin Jarrett.

**South Carolina**

236.   All persons within the State of South Carolina who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "South Carolina Subclass").

237.   The South Carolina Subclass is represented by Plaintiffs LaShonta Griffin and Kaitlyn Rivera.

**Tennessee**

238.   All persons within the State of Tennessee who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Tennessee Subclass").

239.   The Tennessee Subclass is represented by Plaintiff Manuel Orozco.

**Maryland**

240.   All persons within the State of Maryland who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Maryland Subclass").

241.    The Maryland Subclass is represented by Plaintiff Cortney Ege.

**Illinois**

242.    All persons within the State of Illinois who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Illinois Subclass").

243.    The Illinois Subclass is represented by Plaintiff Augusta Guffroy.

**Oregon**

244.    All persons within the State of Oregon who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Oregon Subclass").

245.    The Oregon Subclass is represented by Plaintiff Kathryn Henry.

**Vermont**

246.    All persons within the State of Vermont who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Vermont Subclass").

247.    The Vermont Subclass is represented by Plaintiff Arlene McCoy.

**Missouri**

248.    All persons within the State of Missouri who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Missouri Subclass").

249.    The Missouri Subclass is represented by Plaintiff Brittany Brooks.

**Massachusetts**

250.    All persons within the State of Massachusetts who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Massachusetts Subclass").

251.    The Massachusetts Subclass is represented by Plaintiff Marina Jokic.

**Arizona**

252.    All persons within the State of Arizona who purchased Hain's Earth's Best Baby Foods containing Toxic Heavy Metals from the beginning of any applicable limitations period through the date of class certification, excluding the judge or magistrate assigned to this case, Hain, any entity in which Hain has a controlling interest, Hain's officers, directors, legal representatives, successors, and assigns, and persons who purchased Hain's Earth's Best Baby Foods for the purpose of resale (the "Arizona Subclass").

253.    The Arizona Subclass is represented by Plaintiff Danielle Christensen.

**III.    Additional Class Allegations.**

254.    The number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress for injuries sustained and to obtain class wide damages and injunctive and/or declaratory relief.

255.    There are questions of law and fact raised by the named Plaintiffs' claims common to those raised by the Classes they seek to represent.  Such common questions predominate over questions affecting only individual members of the Classes.  These include but are not limited to:

a.    Whether and which of Defendant's Earth's Best Baby Foods contain(ed) elevated and/or dangerous levels of Toxic Heavy Metals;

b.    Whether Defendant knew or should have known that its Earth's Best Baby Foods contain elevated and/or dangerous levels of Toxic Heavy Metals;

c.    Whether Defendant represented and continues to represent that its Earth's Best Baby Foods were healthy, safe, suitable for babies, and/or that they help in a child's development;

d.    Whether Defendant's representations in marketing, advertising, packaging, labeling, and other promotional materials for the Earth's Best Baby Foods are false, deceptive, or misleading;

e.    Whether Defendant represented and continues to represent that the manufacturing of the Earth's Best Baby Foods is subjected to rigorous testing and quality standards;

f.    Whether Defendant's Earth's Best Baby Foods are subjected to reasonable testing and quality standards;

- 46 -

g.   Whether Defendant's representations were likely to deceive a reasonable consumer;

h.   Whether Defendant knew or recklessly disregarded that its representations were false, deceptive, or misleading;

i.   Whether Defendant continued to make such representations despite knowing that such representations were false, deceptive, or misleading;

j.   Whether a representation that a baby food product is healthy, safe, suitable for babies, and/or that it helps in children's development is material to a reasonable consumer;

k.   Whether Defendant violated each state's unfair deceptive acts and practices statute (e.g., New York General Business Law §§ 349 and 350);

l.   Whether Defendant was unjustly enriched at the expense of the Classes; and

m.   Whether Plaintiffs and Members of the Classes were damaged by Defendant's conduct.

256.   The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by members of the Classes.

257.   Plaintiff Class(es) representatives will fairly and adequately protect the interests of the Plaintiff Class members.  Plaintiffs' counsel are unaware of any conflict of interest between the Class representatives and absent Class members with respect to the matters at issue in this litigation; the Class representatives will vigorously prosecute the suit on behalf of the Classes; and the Class representatives are represented by experienced counsel.  Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation involving consumer protection.

258.     Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action and have committed sufficient resources to represent the Classes.

259.     The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice.  Moreover, the prosecution of separate actions by individual members of the Classes could result in inconsistent or varying adjudications with respect to individual members of the Classes and/or the Defendant.

260.     Defendant has acted or failed to act on grounds generally applicable to all Plaintiffs, necessitating injunctive relief for the Classes.

## CAUSES OF ACTION

### Claim I
### Unjust Enrichment
### (on behalf of all Plaintiffs and all Classes)

261.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

262.     Substantial benefits have been conferred on Defendant by Plaintiffs and the National Purchaser Class, through the purchase of the Earth's Best Baby Foods.  Defendant knowingly and willfully accepted and enjoyed these benefits.

263.     Defendant either knew or should have known that the payments rendered by Plaintiffs and the National Purchaser Class were given and received with the expectation that the Earth's Best Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant.  As such, it would be inequitable for Defendant to retain the benefit of these payments for Earth's Best Baby Foods with harmful level of Toxic Heavy Metals under the circumstances.

264.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the National Purchaser Class.

265.    Plaintiffs and the National Purchaser Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

266.    Plaintiffs and the National Purchaser Class seek against Hain actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>Claim II</u>
<u>Violation of New York's Deceptive Acts & Practices and False Advertising Laws,</u>
<u>N.Y. Gen. Bus. Law §§ 349 and 350</u>
<u>(on behalf of Plaintiffs Michelle Walls, Katherine Avery, Farah Ghanie, Jessie</u>
<u>McNaughton, and the New York Subclass)</u>

267.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

268.    In its respective sales of goods throughout New York, Defendant conducts business and trade within the meaning of N.Y. Gen. Bus. Law § 349.

269.    Plaintiffs Michelle Walls, Katherine Avery, Farah Ghanie, and Jessie McNaughton (the "New York Plaintiffs"), and the New York Subclass members, are consumers who purchased products from Defendant.

270.    N.Y. Gen. Bus. Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.  Pursuant to N.Y. Gen. Bus. Law § 350, false advertising is defined as "advertising, including labeling, or a commodity … if such advertising is misleading in a material respect."

271.    Defendant violated N.Y. Gen. Bus. Law §§ 349 and 350 by representing that its Earth's Best Baby Foods contained "quality" and "pure" ingredients "found in nature," were

healthy, safe, appropriate to feed to children, and/or that its testing protocols "guarantee quality and safety." This was deceptive, untrue, or misleading because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe. These statements were also literally false and likely to deceive the public.

272. Defendant, including its agents and distributors, made untrue, deceptive, and misleading assertions, representations, or omissions about the alleged quality, characteristics, and nature of the Earth's Best Baby Foods.

273. Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

274. The facts concealed, misrepresented, and/or omitted by Defendant were material in that the New York Plaintiffs, the New York Subclass, and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

275. Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

276. Defendant engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

277. Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the New York Plaintiffs and the New York Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

278.     Defendant intended for the New York Plaintiffs and the New York Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

279.     As a result of their reliance, the New York Plaintiffs and the New York Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

280.     The New York Plaintiffs and the New York Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim III**
**Violation of Arizona's Consumer Protection Act, Ariz. Rev. Stat. Ann. § 44-1522**
**(on behalf of Plaintiff Danielle Christensen and the Arizona Subclass)**

281.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

282.     The Arizona Consumer Fraud Act ("ACFA") prohibits any "deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby …." Ariz. Rev. Stat. Ann. § 44-1522(A).

283.     Plaintiff Danielle Christensen and the Arizona Subclass are consumers under the ACFA who purchased Defendant's Earth's Best Baby Foods.

284.     Defendant violated Ariz. Rev. Stat. Ann. § 44-1522 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This

was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

285.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

286.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Christensen and the Arizona Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

287.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

288.    Defendant engaged and continues to engage in deceptive conduct in violation of the ACFA.

289.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Christensen and the Arizona Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

290.    Defendant intended for Plaintiff Christensen and the Arizona Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

291.    As a result of their reliance, Plaintiff Christensen and the Arizona Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

292.     Defendant's misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

293.     Plaintiff Christensen and the Arizona Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim IV**
**Violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-105**
**(on behalf of Plaintiff Mandy Roy and the Colorado Subclass)**

294.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

295.     The Colorado Consumer Protection Act ("CCPA") prohibits, *inter alia*, deceptive trade practices including: knowingly or recklessly making a false representation about the characteristics, ingredients, uses, benefits, alteration, or quantities of goods, food, services, or property (Colo. Rev. Stat. § 6-1-105(e)); representing that goods, food, services, or property are of a particular standard, quality, or grade if he knows or should know that they are of another (Colo. Rev. Stat. § 6-1-105(g)); advertising goods, services, or property with intent not to sell them as advertised (Colo. Rev. Stat. § 6-1-105(i)); failing to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction (Colo. Rev. Stat. § 6-1-105(u)); and knowing or recklessly engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent practice (Colo. Rev. Stat. § 6-1-105(kkk)).

296.     Plaintiff Mandy Roy and Colorado Subclass are consumers under the CCPA who purchased Defendant's Earth's Best Baby Foods.

297.    Defendant violated the CCPA by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

298.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

299.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Roy and the Colorado Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

300.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

301.    Defendant engaged and continues to engage in deceptive conduct in violation of the CCPA.

302.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Roy and the Colorado Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

303.    Defendant intended for Plaintiff Roy and the Colorado Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

304.     As a result of their reliance, Plaintiff Roy and the Colorado Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

305.     Defendant's misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

306.     Plaintiff Roy and the Colorado Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**<u>Claim V</u>**
**<u>Violation of Delaware Uniform Deceptive Trade Practices Act, 6 Del. Code § 2532</u>**
**<u>(on behalf of Plaintiffs Karima Harris and Quincy Tilson, and the Delaware</u>**
**<u>Subclass)</u>**

307.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

308.     Delaware's Uniform Deceptive Trade Practices Act ("DUDTPA") prohibits a person from engaging in a "deceptive trade practice," which includes: "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(9) Advertis[ing] goods or services with intent not to sell them as advertised"; or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  6 Del. Code § 2532.

309.     Defendant is a "person" within the meaning of 6 Del. Code § 2531(5).

310.    Defendant violated 6 Del. Code § 2532 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

311.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

312.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Karima Harris, Quincy Tilson (the "Delaware Plaintiffs") and the Delaware Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

313.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and could deceive a substantial portion of the consuming public.

314.    Defendant engaged and continues to engage in deceptive conduct in violation of the DUDTPA.

315.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the Delaware Plaintiffs and the Delaware Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

316.    Defendant intended for the Delaware Plaintiffs and the Delaware Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

317.    As a result of their reliance, the Delaware Plaintiffs and the Delaware Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

318.    The Delaware Plaintiffs and the Delaware Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim VI**
**Violation of Florida Deceptive and Unfair Trade Practices Act, Florida Stat. §**
**501.204**
**(on behalf of Plaintiff Vanessa Inoa and the Florida Subclass)**

319.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

320.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Florida Stat. § 501.204(1).  Defendant participated in unfair, unconscionable and deceptive trade practices that violated FDUTPA as described herein.

321.    Plaintiff Vanessa Inoa and the members of the Florida Subclass are "consumers" within the meaning of Florida Stat. § 501.203(7).

322.    Defendant engaged in "trade or commerce" within the meaning of Florida Stat. § 501.203(8).

323.    Defendant violated Florida Stat. § 501.204 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or

dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

324.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

325.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Inoa and the Florida Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

326.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

327.    Defendant engaged and continues to engage in deceptive conduct in violation of the FDUTPA.

328.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Inoa and the Florida Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

329.    Defendant intended for Plaintiff Inoa and the Florida Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

330.    As a result of their reliance, Plaintiff Inoa and the Florida Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

331.    Plaintiff Inoa and the Florida Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### Claim VII
### Violation of Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3
### (on behalf of Plaintiffs Cassie Isza and Kristal Rogers, and the Indiana Subclass)

332.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

333.    Indiana law prohibits suppliers from committing any "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."  Ind. Code § 24-5-0.5-3(a).

334.    Defendant's sales of its baby food products to Plaintiffs Cassie Isza, Kristal Rogers (the "Indiana Plaintiffs") and the Indiana Subclass constitute consumer transactions under Ind. Code § 24-5-0.5-2(1).

335.    Defendant is a supplier of Earth's Best Baby Foods under Ind. Code § 24-5-0.5-2(3).

336.    Defendant violated Ind. Code § 24-5-0.5-3 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

337.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

338.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that the Indiana Plaintiffs, Indiana Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

339.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

340.    Defendant engaged and continues to engage in deceptive conduct in violation of the Indiana Deceptive Consumer Sales Act.

341.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the Indiana Plaintiffs and the Indiana Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

342.    Defendant intended for the Indiana Plaintiffs and the Indiana Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

343.    As a result of their reliance, the Indiana Subclass and the Indiana Subclasses have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

344.    On July 12, 2021, Defendant was provided notice of its breach by way of a demand letter sent by the Indiana Plaintiffs.  Defendant was also provided notice months before this, by the numerous consumer class action complaints filed against it.

345.    The Indiana Plaintiffs and the Indiana Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim VIII**
**Violation of North Carolina Unfair or Deceptive Acts or Practices Law, N.C. Gen.**
**Stat. § 75-1.1**
**(on behalf of Plaintiffs Helen Howard and Oshin Jarrett, and the North Carolina**
**Subclass)**

346.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

347.    N.C. Gen. Stat. § 75-1.1(a) states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

348.    Defendant violated N.C. Gen. Stat. § 75-1.1 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

349.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

350.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiffs Helen Howard, Oshin Jarrett (the "North Carolina Plaintiffs"), and the North Carolina Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

351.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

352.    Defendant engaged and continues to engage in deceptive conduct in violation of North Carolina law.

353.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the North Carolina Plaintiffs, and the North Carolina Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

354.    Defendant intended for the North Carolina Plaintiffs and the North Carolina Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

355.    As a result of their reliance, the North Carolina Plaintiffs, and the North Carolina Subclasses have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

356.    The North Carolina Plaintiffs and the North Carolina Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim IX**
**Violation of South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-20**
**(on behalf of Plaintiffs LaShonta Griffin and Kaitlyn Rivera, and the South Carolina Subclass)**

357.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

358.   The South Carolina Unfair Trade Practices Act ("SCUTPA") declares all "unfair or deceptive acts or practices in the conduct of any trade or commerce … unlawful." S.C. Code § 39-5-20(a).

359.   Defendant is a "[p]erson" within the meaning of the SCUTPA. S.C. Code § 39-5-10(a).

360.   Defendant engaged in trade and/or commerce within the meaning of the SCUTPA by selling or otherwise permitting the respective Earth's Best Baby Foods into the stream of commerce. S.C. Code § 39-5-10(b).

361.   Defendant violated S.C. Code § 39-5-20 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe. This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

362.   Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

363.   The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiffs LaShonta Griffin, Kaitlyn Rivera (the "South Carolina Plaintiffs"), and the South Carolina Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

364.   Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

365.    Defendant engaged and continues to engage in deceptive conduct in violation of the SCUTPA.

366.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in the South Carolina Plaintiffs and the South Carolina Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

367.    Defendant intended for the South Carolina Plaintiffs and the South Carolina Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

368.    As a result of their reliance, the South Carolina Plaintiffs and the South Carolina Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

369.    The South Carolina Plaintiffs and the South Carolina Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## Claim X
## Violation of Tennessee Consumer Protection Act, Tenn. Code § 47-18-104
## (on behalf of Plaintiff Manuel Orozco and the Tennessee Subclass)

370.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

371.    The Tennessee Consumer Protection Act, Tenn. Stat. § 47-18-101 *et seq.*, protects consumers from unfair and deceptive practices and acts.

372.     Plaintiff Manuel Orozco and the Tennessee Subclass are consumers under Tenn. Stat. § 47-18-103(3).

373.     Defendant's Earth's Best Baby Foods are goods, and Defendant is a person who sold its products to Plaintiff and Tennessee Subclass members in consumer transactions as those terms are defined under Tenn. Stat. § 47-18-103(8), (14), (20).

374.     Tenn. Stat. § 47-18-104(b)(5), (7), and (9) declare the following acts or practices unlawful:

a.   Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.   Representing that goods are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; and

c.   Advertising goods with intent not to sell them as advertised.

375.     Defendant violated Tenn. Stat. § 47-18-104 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

376.     Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

377.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Orozco and the Tennessee Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

378.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

379.    Defendant engaged and continue to engage in deceptive conduct in violation of the Tennessee Consumer Protection Act.

380.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Orozco and the Tennessee Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

381.    Defendant intended for Plaintiff Orozco and the Tennessee Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

382.    As a result of their reliance, Plaintiff Orozco and the Tennessee Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

383.    Plaintiff Orozco and the Tennessee Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim XI**
**Violation of Massachusetts Regulation of Business Practice and Consumer**
**Protection Act, Mass. Gen. L. c. 93A, § 2**
**(on behalf of Plaintiff Marina Jokic and the Massachusetts Subclass)**

384.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged

herein.

385.     The Massachusetts Regulation of Business Practice and Consumer Protection Act

("MRBPCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or

commerce …." Mass. Gen. L. c. 93A, § 2(a).

386.     Defendant violated Mass. Gen. L. c. 93A, § 2 by representing that its Earth's Best

Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols

ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive

because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or

dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the

Earth's Best Baby Foods exclude ingredients that are unsafe.

387.     Defendant intentionally represented that the Earth's Best Baby Foods were of a

particular standard, grade, or quality when they were in fact adulterated and not fit for

consumption by babies.

388.     The facts concealed, misrepresented, and/or omitted by Defendant were material

in that Plaintiff Marina Jokic and the Massachusetts Subclass and any reasonable consumer

would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

389.     Defendant's conduct and omissions described herein repeatedly occurred in the

course of Defendant's business and were capable of deceiving a substantial portion of the

consuming public.

- 67 -

390.    Defendant engaged and continues to engage in deceptive conduct in violation of the MRBPCPA.

391.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Jokic and the Massachusetts Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

392.    Defendant intended for Plaintiff Jokic and the Massachusetts Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

393.    As a result of their reliance, Plaintiff Jokic and the Massachusetts Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

394.    Defendant has been provided reasonable notice of its breach because a putative class member provided a written demand for relief to Hain on behalf of a proposed Massachusetts class.  *See Albano et al. v. Hain Celestial Group, Inc. et al.*, Case No. 21-cv-01118, ECF No. 36 ¶ 92 (E.D.N.Y. June 17, 2021); *Baldassari v. Pub. Fin. Trust*, 337 N.E.2d 701 (Mass. 1975) (holding that notice by a single class member sufficient for all class members).

395.    Plaintiff Jokic and the Massachusetts Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## Claim XII
## Violation of Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020
## (on behalf of Plaintiff Britany Brooks and the Missouri Subclass)

396.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

397.    The Missouri Merchandising Practices Act ("MMPA") prohibits "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce …."  Mo. Ann. Stat. § 407.020(1).

398.    Defendant violated Mo. Ann. Stat. § 407.020(1) by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

399.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

400.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Britany Brooks and the Missouri Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

401.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

402.    Defendant engaged and continues to engage in deceptive conduct in violation of the MMPA.

403.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Brooks and the Missouri Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they

would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

404.    Defendant intended for Plaintiff Brooks and the Missouri Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

405.    As a result of their reliance, Plaintiff Brooks and the Missouri Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

406.    Plaintiff Brooks and the Missouri Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>**Claim XIII**</u>
<u>**Violation of Maryland Consumer Protection Act, Md. Code, Comm. Law § 13-303**</u>
<u>**(on behalf of Plaintiff Cortney Ege and the Maryland Subclass)**</u>

407.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

408.    The Maryland Consumer Protection Act, Md. Code, Comm. Law § 13-303, prohibits unfair, abusive, and deceptive practices, including: false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; representations that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; and a failure to state a material fact if the failure deceives or tends to deceive.  Md. Code, Comm. Law § 13-301(1), (2)(i), (2)(iv), (3).

409.    The Maryland Consumer Protection Act applies to Defendant's acts or practices as described herein because Defendant's acts or practices were in connection with the sale of consumer goods.

410.    Plaintiff Cortney Ege and each member of the Maryland Subclass are persons within the meaning of Md. Code, Comm. Law § 13-408.

411.    Defendant's Earth's Best Baby Foods are subject to the Maryland Consumer Protection Act because they are consumer goods.

412.    Defendant violated Md. Code, Comm. Law § 13-303 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Tainted Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

413.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

414.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Cortney Ege and the Maryland Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

415.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

416.    Defendant engaged and continue to engage in deceptive conduct in violation of the Maryland Consumer Protection Act.

417.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Cortney Ege and the Maryland Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

418.     Defendants intended for Plaintiff Cortney Ege and the Maryland Subclasses to rely on its deceptive misrepresentations and omissions when purchasing their Earth's Best Baby Foods.

419.     As a result of their reliance, Plaintiff Cortney Ege and the Maryland Subclasses have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

420.     Plaintiff Cortney Ege and the Maryland Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### Claim XIV
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2
### (on behalf of Plaintiff Augusta Guffroy and the Illinois Subclass)

421.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

422.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any

practice described in Section 2 of the "Uniform Deceptive Trade Practices Act."  815 ILCS 505/2.

423.    The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

424.    Defendant is a "person" as defined by 815 ILCS 505/1(c).

425.    Plaintiff Augusta Guffroy and each member of the Illinois Subclass are "consumers," as defined by 815 ILCS 505/1(e), because they purchased Defendant's Earth's Best Baby Foods.

426.    Defendant's Earth's Best Baby Foods are "merchandise," as defined by 815 ILCS 505/1(b).

427.    Defendant violated 815 ILCS 505/2 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Earth's Best Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

428.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

429.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Guffroy and the Illinois Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

430.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

431.    Defendant engaged and continues to engage in deceptive conduct in violation of the ICFA.

432.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Guffroy and the Illinois Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

433.    Defendant intended for Plaintiff Guffroy and the Illinois Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

434.    As a result of their reliance, Plaintiff Guffroy and the Illinois Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

435.    Plaintiff Guffroy and the Illinois Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim XV**
**Violation of Oregon Unlawful Trade Practices Law, O.R.S. § 646.608**
**(on behalf of Plaintiff Kathryn Henry and the Oregon Subclass)**

436.    Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

437.    Oregon's Unlawful Trade Practices Act ("OUTPA") prohibits persons from engaging in an unlawful practice in the course of conducting their business, vocation, or

- 74 -

occupation.  O.R.S. § 646.608.  OUTPA specifically provides that such unlawful practices include (1) representing that goods are of a particular standard, quality, or grade when they are not; and (2) failing to disclose known material defect or nonconformity concurrent with tender or delivery of the goods. O.R.S. § 646.608(1)(g), (t).  Defendant participated in deceptive, unconscionable, and unlawful trade practices in violation of OUTPA as described herein.

438.    Defendant engaged in "trade" or "commerce" within the meaning of OUTPA. O.R.S. § 646.605(8).

439.    Defendant violated O.R.S. § 646.608 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Tainted Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

440.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

441.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff Kathryn Henry and the Oregon Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

442.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

443.    Defendant engaged and continues to engage in deceptive conduct in violation of the OUTPA.

444.     Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff Henry and the Oregon Subclass suffering actual damages when they purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

445.     Defendant intended for Plaintiff Henry and the Oregon Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

446.     As a result of their reliance, Plaintiff Henry and the Oregon Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

447.     Plaintiff Henry and the Oregon Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**Claim XVI**
**Violation of Vermont Consumer Fraud Act, 9 Vt. Stat. § 2453**
**(on behalf of Plaintiff Arlene McCoy and the Vermont Subclass)**

448.     Plaintiffs repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

449.     The Vermont Consumer Fraud Act ("VCFA") declares all "unfair or deceptive acts or practices in commerce" unlawful.  9 Vt. Stat. § 2453(a).

450.     Plaintiff Arlene McCoy and the Vermont Subclass are consumers within the meaning of the VCFA because they purchased Defendant's Earth's Best Baby Foods for household use.  9 Vt. Stat. § 2451a(a).

451.    Defendant is a seller within the meaning of the VCFA because it regularly and principally engaged in the business of selling its Earth's Best Baby Foods to consumers.  9 Vt. Stat. § 2451a(c).

452.    Defendant's Earth's Best Baby Foods are goods or services within the meaning of the VCFA.  9 Vt. Stat. § 2451a(b).

453.    Defendant violated 9 Vt. Stat. § 2453 by representing that its Earth's Best Baby Foods were healthy, safe, appropriate to feed to children, and/or that its testing protocols ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.  This was deceptive because the Tainted Baby Foods contained, or had a risk of containing, elevated and/or dangerous levels of Toxic Heavy Metals, and Defendant's testing protocols did not ensure the Earth's Best Baby Foods exclude ingredients that are unsafe.

454.    Defendant intentionally represented that the Earth's Best Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

455.    The facts concealed, misrepresented, and/or omitted by Defendant were material in that Plaintiff McCoy and the Vermont Subclass and any reasonable consumer would have considered them when deciding whether to purchase the Earth's Best Baby Foods.

456.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

457.    Defendant engaged and continues to engage in deceptive conduct in violation of the VCFA.

458.    Defendant's misrepresentations, omissions, and deceptive acts or practices resulted in Plaintiff McCoy and the Vermont Subclass suffering actual damages when they

purchased the Earth's Best Baby Foods that were worth less than the price paid and that they would not have purchased had they known of the presence, or risk of presence, of elevated and/or dangerous levels of Toxic Heavy Metals that did not conform to the packaging.

459.    Defendant intended for Plaintiff McCoy and the Vermont Subclass to rely on its deceptive misrepresentations and omissions when purchasing the Earth's Best Baby Foods.

460.    As a result of their reliance, Plaintiff McCoy and the Vermont Subclass have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

461.    Plaintiff McCoy and the Vermont Subclass seek against Defendant actual damages and injunctive relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief and judgment against Defendant as to each and every count, including:

A.  Define the Classes as pleaded herein and give notice to all potential class members in a form and manner to be determined by the Court upon Representative Plaintiffs' motion to certify the class;

B.  Take any and all other appropriate steps to protect the rights of the Class Members as alleged herein;

C.  Award declaratory and/or injunctive relief as pleaded herein;

D.  Award general damages pursuant to common law and by statute (e.g., N.Y. Gen. Bus. Law §§ 349 and 350) for each Representative Plaintiff and Class Member as is established at the time of trial;

E. Award special damages pursuant to common law and by statute for each Representative Plaintiff and Class Member as is established at the time of trial;

F. Award punitive damages pursuant to common law and by statute for each Representative Plaintiff and Class Member as is established at the time of trial;

G. Award costs of suit, prejudgment and post-judgment interest, and attorneys' fees pursuant to each state's unfair deceptive acts and practices statute (e.g., N.Y. Gen. Bus. Law §§ 349 and 350), or as otherwise allowed by law; and

H. Award such other relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date:   July 12, 2021
        New York, NY

Respectfully submitted,

*/s/ Christopher K. Leung*

Christopher K. Leung
Max E. Rodriguez
Alison Borochoff-Porte*
POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
Tel.: (917) 985-3995
Email: Chris@PollockCohen.com

*Counsel for Plaintiffs and Proposed Class Representatives*

*\*Application for admission forthcoming*